UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:08-cv-80512-DMM

| | |
|---|---|
| JEFF DORIA, INFINITY FINANCIAL PARTNERS, INC., and CENTURY TRADING GROUP, LLC | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CLASS ACTION SERVICES, LLC, CYPRESS FINANCIAL RESEARCH, LLC, MARK ZINN, MARK DONALDSON, JONATHAN WADE, and JEFF GUSHE, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

---

DEFENDANTS' MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE AMENDED COMPLAINT

---

Walter J. Mathews & D. Patricia Wallace
Fla. Bar Nos. 0174319 & 0185930
wjmathews or pwallace@wjmlawfirm.com
Walter J. Mathews, P.A.
Attorneys for Defendants
Courthouse Law Plaza
700 SE Third Avenue, Suite 300
Fort Lauderdale, Florida 33316
Tel:     (954) 463-1929 Fax: -1920

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

INTRODUCTION ........................................................................................................1

Procedural Background ...............................................................................................1

Motion to Dismiss Standard.........................................................................................6

ARGUMENT ..............................................................................................................7

I.    Plaintiffs Fail to Allege Facts
Sufficient to Establish Standing Under RICO ...................................................7

II.   Plaintiffs Fail to Allege Facts
Sufficient to State a Claim Under RICO..........................................................10

    A.     Plaintiffs Fail to Allege Sufficient
Conduct by Goshay or by Roxanne or Robert Zinn ............................10

    B.     Plaintiffs Fail to Allege Facts that Would
Satisfy the Continuity Requirement of RICO ....................................11

    C.     Plaintiffs Fail to Allege Facts Sufficient to Show that
They Were Injured as a Result of Mail or Wire Fraud ........................12

    D.     Plaintiffs Fail to Allege Facts
Sufficient to State a Claim for Violation of § 1962(a)..........................13

    E.     Plaintiffs Fail to Allege Facts
Sufficient to State a Claim for Violation of § 1962(d) .........................14

III.  The Complaint Does Not Comply
With Rule of Civil Procedure 9(b) ................................................................14

IV.  The State Law Claims Should be Dismissed ..................................................17

V.   Amendment Would Be Futile ......................................................................18

CONCLUSION...........................................................................................................19

CERTIFICATE OF SERVICE .....................................................................................19

Defendants Class Action Services, LLC ("CAS"); Cypress Financial Research, LLC ("Cypress Financial"); Mark Zinn; Mark Donaldson; Jonathan Wade; Jeff Goshay; Roxanne Zinn; and Robert Zinn (collectively "Defendants") file their Memorandum in Support of their Motion to Dismiss the Amended Complaint with prejudice and state:

<u>INTRODUCTION</u>

Plaintiffs come before the Court to ask for an award of funds obtained through Defendants' allegedly fraudulent submission of claims to class settlement administrators. The only damages Plaintiffs claim is their loss of commissions they allege to be due under contracts attached as Exhibits B and C to the Amended Complaint, and Plaintiffs demand Defendants provide them accountings in accordance with those documents. In their Amended Complaint, Plaintiffs have not alleged facts showing a direct relationship between their injuries and any racketeering activity on the part of Defendants; they have not sufficiently pled facts to state a claim for violation of the mail and wire fraud statutes or of RICO; they have not satisfied the particularity requirement of Rule 9(b); and they have not alleged any specific racketeering conduct by Defendant Goshay or the newly added Defendants Roxanne Zinn and Robert Zinn. Plaintiffs' Amended Complaint must be dismissed with prejudice.

<u>Procedural Background</u>

On May 16, 2008, Plaintiffs filed their initial complaint. (D.E. 1). On June 11, 2008, they filed their Local Rule 12.1 Civil RICO Case Statement. (D.E. 9). On June 18, 2008, Defendants filed a motion to dismiss, asserting that Plaintiffs lacked standing to bring their claims and that they had failed to state a claim upon which relief could be granted. (D.E. 12). On October 30, 2008, the Court granted Defendants' motion to dismiss but authorized Plaintiffs to file an amended complaint. (D.E. 63). The Court dismissed the Complaint on the grounds that (1) the corporate Plaintiffs Century Trading Group, LLC ("Century Trading") and Infinity Financial Partners, Inc. ("Infinity Financial") "failed to state a claim for which relief [could] be granted; (2) the complaint and RICO statement failed to allege an injury sufficiently direct to satisfy 18 U.S.C. § 1964(c)'s proximate cause requirement; (3) the complaint failed to allege facts showing that Plaintiff Jeff Doria was injured by the use or investment of racketeering income as required to state a claim under 18 U.S.C. § 1962(a); (4) the complaint failed to allege facts showing that Defendants committed an overt act that is independently wrongful under a substantive provision of RICO as required under 18 U.S.C. § 1962(d); and (5) the complaint

failed to allege facts showing that Defendants committed predicate acts constituting mail or wire fraud. (D.E. 66). The Court also found "that the absence of specific facts and lack of delineation among Defendants and their actions violates the particularity required by FED.R.CIV.P. 9(b)." (D.E. 66, p.14). The Court stated that it "would decline to exercise supplemental jurisdiction over the pendent state law claims if the RICO claim is dismissed." (D.E. 63, p.12, n.15; p.14, n.18). Specifically, the Court stated that it did "not see how Plaintiff's loss of commission money is a direct result of Defendants' receipt of fraudulent funds. Rather, it appears that the proper claim is for breach of contract: namely, that Plaintiff did not get paid what he was owed under his referral agreement." (D.E. 63, p.9).

On November 12, 2008, Plaintiffs filed an Amended Complaint. (D.E. 66). The Amended Complaint sets forth the same causes of action as the initial complaint: (1) violation of RICO, (2) breach of contract, (3) common law fraud, (4) an accounting, and (5) declaratory and preliminary injunctive relief. Plaintiffs allege that they were entitled to payment of commissions under two alleged contracts, one running between Infinity Financial and Defendant Cypress Financial (Exhibit B attached to the Amended Complaint) (the "Infinity Financial Agreement") and another running between Century Trading and Cypress Financial (Ex. C attached to the Amended Complaint) (the "Century Trading Agreement").[1] Importantly, CAS is not a party to either agreement. The "Infinity Financial Agreement" is dated September 21, 2004, and the "Century Trading Agreement" is dated August 20, 2004. Both Exhibit B and Exhibit C contain forum selection clauses that state that "[a]ny dispute relating to, in connection with or arising out of this Agreement shall be brought in the State and Federal courts located in New York County, New York." (Ex. B, ¶7(d) and Ex. C, ¶7(d)).[2] Plaintiffs allege that Plaintiff Doria "was the principal owner of Infinity Financial, and in effect was/is an intended third-party beneficiary of the Infinity Financial Agreement." (D.E. 66, ¶28). Nothing in the documents attached to the Amended Complaint indicates that any Plaintiff was entitled to commissions for referral of referrals, and nothing in the documents indicates that Cypress Financial was obligated to pay

---

[1]    The initial complaint erroneously alleged that "Doria and CAS entered into a contract" for payment of referral fees. (D.E. 1, ¶62).

[2]    Notwithstanding the express language contained in the Infinity Financial Agreement, Plaintiffs plead that "[t]he Infinity Financial Agreement dictated the application of Florida law." (D.E. 66, ¶28, n.6).

Plaintiff Doria.[3]

The Amended Complaint basically reiterates the allegations of the initial complaint. It alleges that Defendant CAS sought to recover millions of dollars for investors who had lost money following the stock market downturn of 2001. The Amended Complaint alleges that Plaintiff Doria referred approximately 80 clients to CAS and that some of those referrals referred additional investors. The Amended Complaint alleges that CAS submitted its clients' claims to federal government-administered or privately administered class action funds. The Amended Complaint alleges that CAS began to submit claims to the court-appointed administrators of the federal government settlement funds for amounts much larger than investors' actual losses. The Amended Complaint alleges that the sheer volume of claims submitted by CAS to the settlement administrators made it nearly impossible for the administrators to verify the submissions. The Amended Complaint alleges that CAS developed a relationship with someone working for one or more of the settlement administrators to insure that its submissions would not be verified and to make it possible for CAS to collect settlement funds for claims filed after deadlines. The Amended Complaint alleges that CAS bought out some of its referral agents. The Amended Complaint also alleges that Defendant Zinn attempted to buy out Plaintiff Doria, but Doria refused because he was not provided the financial records to confirm what he was owed under the referral agreements.

In formulating their Amended Complaint, Plaintiffs have added some detail but very little relevant substance. Most of the new material describes the history of the relationships of the parties, beginning with Defendant Mark Zinn's having worked for Plaintiff Doria's father, navigating through ten years of Zinn and Doria's weekly Thursday-night dinners, and cataloguing several meetings between one or more of the Defendants and Plaintiff Doria. Plaintiffs did see fit to add several allegations about the use of the mails and wires. They alleged that "the court and/or the court-appointed administrator(s) would use either the interstate mail, via the United States Postal Services, to send checks or interstate electronic funds wiring to

---

[3]     As Plaintiffs know and as discovery has demonstrated, payments by Defendant CAS to Plaintiff Doria were made to him as the third-party beneficiary of the agreement between CAS and Rumson Capital, LLC, (the "Rumson Agreement"), which is not referenced in the Complaint. (D.E. 47, p.9; D.E. 47-2). As Plaintiffs know, CAS made no payments to Doria other than those due under the Rumson Agreement. Plaintiff Doria received over $1.2 million as a third-party beneficiary to the Rumson Agreement. (D.E. 52, p.12).

deliver the settlement funds to CAS.  Upon CAS' receipt of the funds, CAS would further manipulate the financials, and send either checks by interstate mail via the United States Postal Service or interstate electronic wires to either Cypress Financial, Infinity Financial, or Century Trading's offices in Florida and/or New York." (D.E. 66, ¶35).[4]  Plaintiffs also allege that "CAS formed somewhat of an alliance with the court-appointed administrator(s) that the courts entrusted to verify the filings, allowing CAS to inflate claims two (2) to four (4) times actual losses." (D.E. 66, ¶35).  From these assertions, Plaintiffs concluded:  "Clearly, as the Defendants [sic] fraudulent scheme stretched from coast to coast, affecting individuals and entities in all fifty (50) states, interstate mails, via the United States Postal Service, and wires were monumentally instrumental in carrying out their fraudulent scheme." (D.E. 66, ¶35).

Among those who were allegedly receiving electronic transfers of funds or checks via the mails from CAS were Plaintiffs Infinity Financial and Century Trading.  (D.E. 66, ¶36). According to the Amended Complaint, CAS's payment of funds without providing detailed financial statements along with these payments constituted mail and wire fraud.  (D.E. 66, ¶36).

The Amended Complaint alleges that Doria first became aware of a problem in his relationship with CAS in April 2005, when he, Jonathan Wade, and Roy Sidikman, the managing member of Century Trading, "met at the Maritime Hotel in Manhattan for dinner and had drinks at the Park Bar." (D.E. 66, ¶34).  Nonetheless, according to the Amended Complaint, the payments to Plaintiffs continued to roll in, along with detailed financial statements.  (D.E. 66, ¶35).  In 2007, however, "CAS and/or Cypress Financial stopped providing detailed financial statements along with the Plaintiffs [sic] commission payments." (D.E. 66, ¶35).  According to the Amended Complaint, in January 2007, Plaintiff Doria asked Defendants Wade and Donaldson "where the rest of his money was." (D.E. 66, ¶41).  The Amended Complaint does not provide Wade or Donaldson's response, instead focusing on Wade and Donaldson's statement that "they were looking to sell the business." (D.E. 66, ¶41).  Doria responded that "'[he] was entitled to a piece of CAS should it sell.'" (D.E. 66, ¶41).

---

[4]      Despite the Court's criticism of Plaintiffs' use of the term "submitted" in connection with their allegation that Defendants "submitted" fraudulent claims, Plaintiffs do not allege that Defendants used the mails or wires to "submit" claims to class settlement administrators.  (D.E. 63, p.12).  In a different context, Plaintiffs generally allege that "CAS and Cypress Financial used the interstate mail, via the United States Postal Service, to send financial documents, filings, correspondence, and payments/commissions to one another, the referral agents, clients, the courts, the court-appointed administrator(s), and others." (D.E. 66, ¶61).

Despite Doria's suspicions beginning in 2005 and his and Sidikman's alleged conversations with Mark Zinn in 2007, Doria nonetheless wanted "a piece of CAS," accepted "$500,000 in 2007," and expected more payments.  (D.E. 66, ¶43).[5]  On April 16, 2008, Plaintiff Infinity Financial on behalf of Century Trading accepted a check for $62,000 from Cypress Financial.  (D.E. 66, ¶45).[6]

According to the Amended Complaint, in 2007, Century Trading's managing member Sidikman allegedly met in person with Defendant Mark Zinn in New York.  (D.E. 66, ¶42).  The Amended Complaint further claims that "Zinn divulged [to Sidikman] that CAS had formed an '[inappropriate] relationship' with the court-appointed administrator(s) [Gilardi and/or Garden City Group], which allowed CAS complete autonomy to file fraudulent claims without apprehension that Gilardi and/or Garden City Group would verify the filed claims, because the increased filings manufactured by CAS were also mutually beneficial to the court-appointed administrator(s)."  (D.E. 66, ¶42) (brackets in original).  According to the Amended Complaint, "Zinn had not only described the methods CAS was using to obtain the ill-gotten funds to Sidikman, but he had also explained CAS' methods to Doria."  (D.E. 66, ¶47).  According to the Amended Complaint, "[m]ost importantly, Zinn acknowledged that Gilardi and/or Garden City Group were not checking the calculations provided by CAS as the volume of data being submitted was too large."  (D.E. 66, ¶47).

Even with the opportunity to amend their complaint, Plaintiffs assert no damages other than loss of commissions allegedly due under alleged referral agreements.  The Amended Complaint, like the initial complaint, claims that CAS submitted fraudulent claims to class action settlement administrators, accepted more payments than was rightfully due their clients, but failed to pay Plaintiffs and others percentage amounts due on the basis of the alleged fraudulent submissions.  Plaintiffs claim that they were injured as a result of CAS and Cypress Financial's hiding settlement amounts allegedly fraudulently obtained from settlement administrators.  As the Amended Complaint states:  "Not wanting to give away the fruit of their fraudulent efforts,

---

[5]     According to Defendant Donaldson's interrogatory answers, Doria accepted a total of $1,206,766.24 from CAS from 2005 through June 25, 2008, well over a month after Plaintiffs filed this suit.  (D.E. 52, p.12).

[6]     According to Defendant Mark Zinn's interrogatory answers, Century Trading accepted a total of $664,710.04 from July 27, 2006, through June 18, 2008, over a month after Plaintiffs filed this suit.  (D.E. 49), pp.14-15.

CAS and Cypress Financial hid their earnings from the referral agents, only paying the referral agents a small portion of the monies actually owed to them under the referral agreements. Clearly, there is a direct connection and/or proximate cause between the fraudulent monies received by CAS and/or Cypress Financial and the Plaintiffs [sic] loss of commission monies." (D.E. 66, ¶59). In other words, Plaintiffs ask the Court to award them their percentage cut of funds that they allege were fraudulently obtained. Recognizing their dubious position to collect referral amounts based on these alleged fraudulent submissions, Plaintiffs repeatedly assert that they are entitled to more commission payments but that they have not participated in the alleged fraudulent schemes. (D.E. 66, ¶¶36, 51, 59, and 64).

Plaintiffs add allegations that Defendants "wholly misrepresented the claims actually received," but do not allege to whom these supposed misrepresentations were made. (D.E. 66, ¶5). Plaintiffs allege "a corrupt enterprise" that "was accomplished by the manufacturing of three (3) separate sets of financial 'pictures.'" (D.E. 66, ¶5). Plaintiffs do not allege, however, who did the alleged "manufacturing" or when this alleged conduct occurred. They allege that "[t]hese three (3) diverse sets of financial 'pictures' benefited this corrupt enterprise the most." (D.E. 66, ¶5). They allege that the first set "was sent to the court-appointed administrator(s)" and that the second set of financials "was only provided to the Defendants [sic] referral agents in the beginning of the operation of this corrupt enterprise," but do not allege who supposedly sent these financials. (D.E. 66, ¶5).[7]

The Amended Complaint also adds two Defendants, Roxanne Zinn, Defendant Mark Zinn's wife, and Robert Zinn, Defendant Mark Zinn's father. The Amended Complaint, however, alleges no specific conduct in participation of the alleged predicate acts on the part of Roxanne or Robert Zinn or on the part of Defendant Jeff Goshay.

<u>Motion to Dismiss Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim *showing* that the pleader is entitled to relief." (emphasis added). Allegations that are "merely consistent with" liability leave only a depiction that "stays in neutral territory" and "stops short of the line between possibility and plausibility." <u>Bell Atlantic Corp. v.</u>

---

[7]   In apparent contradiction to the allegation of what "was provided" referral agents, Plaintiffs allege, "[i]n stark contrast to the prior time period between 2004 and 2006, CAS and/or Cypress stopped providing detailed financial statements . . . [and] intentionally hid the financial statements that they had so willingly provided previously." (D.E. 66, ¶35).

Twombly, 127 S. Ct. 1955, 1966 (2007).  To survive a motion to dismiss, the claim must cross "the line between possibility and plausibility."  Id.  The plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965.   In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).   "Conclusory allegations in the complaint need not be taken as true and the plaintiff must allege sufficient facts to support his allegations."  Marine Coatings of Ala., Inc. v. United States, 792 F.2d 1565, 1568 (11th Cir. 1986).

ARGUMENT

For the reasons set forth in the Court's first order of dismissal and those set forth below, the Amended Complaint should be dismissed.

I.

Plaintiffs Fail to Allege Facts<br>Sufficient to Establish Standing Under RICO

Despite this Court's clear statement of the law of standing under RICO, Plaintiffs did not allege any harm beyond loss of commissions, damages properly sought through a breach of contract action.   (D.E. 66, ¶64; see also ¶¶6, 51, 59, 61, 64).[8]  To date, Plaintiffs have not identified the alleged injury to their business or property as anything other than loss of commissions.[9]

In dismissing Plaintiffs' initial complaint, the Court stated:   "Applying the Supreme Court's precedent in Bridge, Anza, and Holmes, this court cannot conclude that proximate causation exists in the case at bar.  Even assuming that Plaintiff properly alleged the predicate acts, and acknowledging that Plaintiff does not need to prove that he relied upon Defendants' misrepresentations, this Court does not see how the Plaintiff's loss of commission money is a

---

[8]      Plaintiffs also repeated the ambiguous allegation that "Plaintiff [sic] was injured in its [sic] business and property as a direct result of the Defendant persons [sic] continuous pattern of racketeering activity."  (D.E. 66, ¶66).

[9]      In response to Defendants' interrogatory, "State with specificity the injury in your business or property that you have suffered "as a direct result of the Defendant persons [sic] continuous pattern of racketeering activity" as alleged in Paragraph 48 of the Complaint," Plaintiffs objected on the ground that the interrogatory was "premature."  (D.E. 48, p.11; D.E. 48, Exs. A & B, interrogatory answer 17).

direct result of Defendants' receipt of fraudulent funds.  Rather, it appears that the proper claim is for breach of contract:  namely, that Plaintiff did not get paid what he was owed under his referral agreement.  The Complaint and RICO statement fail to allege an injury that is sufficiently direct to satisfy § 1964(c)'s proximate cause requirement."  (D.E. 63, p.9).  This same conclusion applies to the facts as alleged in Plaintiffs' Amended Complaint.

Article III standing requires the plaintiff to show that:  (1) it suffered or is immediately likely to suffer an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection exists between the injury and the alleged conduct; and (3) there is a likelihood that a favorable judicial decision will redress that injury. See Lujan v. Defendants of Wildlife, 504 U.S. 555, 560-61 (1992).  RICO authorizes a private right of action to "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive restrictions.  18 U.S.C. § 1964(c).  To satisfy standing requirements, a RICO plaintiff must show that it was injured "by reason of" the pattern of racketeering activity, which means that the plaintiff must show "(1) a sufficiently direct injury so that the plaintiff has standing to sue; and (2) proximate cause."  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1287 (11th Cir. 2006).  In evaluating proximate cause, the court must ask "whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); see also Bridge v. Phoenix Bond & Indem. Corp, 128 S. Ct. 2131 (2008).  Under proximate cause principles under RICO, the plaintiff must show that someone relied upon a misrepresentation by the defendants and that the reliance directly caused harm to the plaintiff. See Bridge, 128 S. Ct. 2131.

Plaintiffs' RICO claim must fail for the same reasons that the RICO claim in the initial complaint and the claims in Anza failed.  The plaintiff in Anza brought a RICO action against a competitor alleging that it was illegally selling products free of sales tax and using the mails or wire transfers to sales tax returns to the State of New York.  The plaintiff claimed to be injured because its competitor, by not paying taxes, gained a competitive edge and opened a new facility that caused plaintiff to lose significant business and market share.  Relying on Holmes and Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), the Court held that there was no proximate cause between the plaintiff's harm and the defendants' conduct of submitting false tax returns to the State.  As the Court stated, "[t]he direct victim of this conduct was the State of New York," not plaintiffs.  Anza, 547 U.S. 458.  Although the plaintiff, of course, "suffered its own harms

8

when [its competitor] failed to charge customers for the applicable sales tax," the cause of these harms was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violations (defrauding the State)." Id. In Anza, the Court concluded that if the allegation that defendants were defrauding the State of New York of tax revenues, "the State can be expected to pursue appropriate remedies."

Here, the cause of Plaintiffs' alleged harm of lost commissions was a set of actions (alleged nonpayment of commissions) entirely distinct from the alleged RICO violations (allegedly defrauding class settlement administrators or the courts).[10]   Assuming that CAS misreported its claims to settlement administrators, which it did not, such reporting did not *cause* any alleged lower payments to Plaintiffs.  Whether Defendants defrauded anyone else, promised Plaintiffs that they would pay them more, failed to provide financial statements, or even provided flawed financial statements, is of no moment.  None of these activities or omissions could have proximately caused Plaintiffs' loss of commissions.  Even assuming that CAS or Cypress Financial underreported to referral agents the payments it received from settlement administrators, which they did not, this underreporting did not *cause* any diminishment of funds received by referral agents.  Plaintiffs' purported damages cannot be attributed to any alleged racketeering activities of Defendants.

In essence, Plaintiffs seek their cut of funds illegally due under one or more contracts and obtained through alleged fraud on class action settlement administrators and the federal courts. Despite the addition of factual allegations, Plaintiffs have not shown that they suffered any injury proximately caused by any conduct of Defendants allegedly in violation of 18 U.S.C. § 1962. Plaintiffs assert no injury other than loss of commissions due under alleged contracts.  Section 1964(c) does not provide a cause of action for every kind of conduct that causes harm.  As stated by the Second Circuit, "the purpose of civil RICO liability does not extend to deterring any illegal act . . . for which there are state and common law remedies."  Hecht v. Commerce

---

[10]     It is not clear what other activities, if any, Plaintiffs allege to be predicate acts under RICO.  Plaintiffs may be trying to classify the following as predicate acts:  that referral agents were not provided financial statements, that referral agents were provided inaccurate financial statements, or that misrepresentations were made to Plaintiffs concerning referral payments. Assuming for the moment that Plaintiffs are trying to identify these as predicate acts and assuming for the moment that these allegations are true (which they are not), these alleged actions are nonetheless entirely distinct from the cause of Plaintiffs' alleged loss of commissions, that is, simply, the non-payment of commissions.

Clearing House, 897 F.2d 21, 24 (2d Cir. 1990); see also Niamehr v. Home Shopping Product Presentation Club, No. 90 Civ. 0370(PKL), 1991 WL 33431 (S.D.N.Y. Mar. 4, 1991) (dispute over payment for goods is properly brought in state court).  Even assuming that CAS or Cypress Financial did not pay referral fees in accordance with contracts, such underpayment was at most a failure to perform contractual duties and would not afford Plaintiffs a cause of action under RICO.

For these reasons, Plaintiffs' RICO claim should be dismissed.

II.

Plaintiffs Fail to Allege Facts
Sufficient to State a Claim Under RICO

To state a claim under RICO, Plaintiffs must allege:  (1) the existence of an enterprise; (2) acts of racketeering, commonly referred to as "predicate acts," which affect interstate or foreign commerce; (3) a pattern of racketeering activity in which the racketeer commits at least two distinct acts; and (4) injury to property or business as a direct result of the predicate acts. See Pelletier, 921 F.2d 1465.   Although Plaintiffs have not identified in their Amended Complaint under which sections of 18 U.S.C. 1962 they attempt to bring their claims, their RICO Case Statement indicates that they seek to allege violations under Sections 1962(a), (c), and (d). See D.E. 9, ¶5.

A.  Plaintiffs Fail to Allege Sufficient
Conduct by Goshay or by Roxanne or Robert Zinn

As an initial matter, Defendants Goshay, Roxanne Zinn, and Robert Zinn must be dismissed as defendants.  Where allegations are made against individuals, the plaintiff must also make factual allegations as to how the individuals participated in the operation or management of the enterprise itself.  See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).  Conclusory allegations that a defendant was an owner or operator will not carry a plaintiff past a motion to dismiss for failure to state a claim under Rule 12(b)(6).  See Comcast of South Fla. II, Inc. v. Best Cable Supply, Inc., No. 07-22335-CIV, 2008 WL 190584 (S.D. Fla. Jan. 22, 2008) (dismissing RICO claim where "Plaintiffs do not offer *any* factual allegations as to *how* the individual Defendants played a part in directing the affairs of the enterprise).  The only allegations against Goshay, Roxanne Zinn, and Robert Zinn, are conclusory, and, as such, are not admitted as true in a motion to dismiss.  See S. Fla. Water Mgmt. Distr. v. Montalvo, 84 F.3d 402, 409 n.10 (11th Cir. 1996).

10

Plaintiffs have not alleged how Defendants Jeff Goshay, Roxanne Zinn, or Robert Zinn participated in the operation or management of the enterprise itself.  The Amended Complaint alleges only that (1) "Zinn's wife Roxanne Zinn is listed as a Manager/Member of Cypress Financial on the Florida Department of State, Division of Corporation's website," (2) "Zinn's father, Robert Zinn, . . . was at one time listed as the Manager/Member of Cypress Financial [and] was/is responsible for maintaining the financial records of Cypress Financial, among other daily tasks related to the business operations of Cypress Financial"  (D.E. 66, ¶4, n.1), (3) Goshay, Roxanne and Robert Zinn "are all Defendant persons who have engaged in a continuous pattern of criminal activity and serve as officers of the offending business enterprise, (4) Goshay, Roxanne Zinn, and Robert Zinn "are all employed by and/or associated with Class Action Services, LLC, and (5) Roxanne and Robert Zinn "are employed by and/or associated with Cypress Financial."  (D.E. 66, ¶¶54-56).  In fact, one of the allegations in the RICO count makes clear that Roxanne Zinn was not responsible for the activities of Cypress Financial:  "Mark Zinn was primarily responsible for the operation and managing of this enterprise, notwithstanding the presence of Roxanne Zinn's name as the managing member on the Florida Secretary of State business entity filings."  (D.E. 66, ¶63).

Plaintiffs have not alleged any conduct or agreement to participate in conduct on the part of Goshay, Roxanne Zinn, or Robert Zinn.  Accordingly, the claims against them must be dismissed.

B.    Plaintiffs Fail to Allege Facts that Would
      Satisfy the Continuity Requirement of RICO

Plaintiffs' clarification of their claims shows that they cannot satisfy the RICO continuity requirement.  To plead a pattern of racketeering activity, a plaintiff must allege facts that show that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature."  Jackson v. BellSouth Telecommunications, 372 F.3d 1259, 1269 (11th Cir. 2004) (citing 18 U.S.C. § 1961(5); H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-43; Jones v. Childers, 18 F.3d 899, 910-13 (11th Cir. 1994)).  A plaintiff may show "continuity over a closed period by proving a series of related predicates extending over a substantial period of time," or open-ended continuity by showing "either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or

11

that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'"  Jackson, 372 F.3d 1265 (quoting H.J. Inc., 492 U.S. at 241-42).  In the Eleventh Circuit, "an alleged mail fraud scheme lasting approximately six months "was accomplished in too short a period of time . . . to qualify it as a pattern of racketeering activity.'"  Jackson, 372 F.3d at 1266 (quoting Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm., 953 F.2d 587, 593 (11th Cir. 1992); see also Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (stating that the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time'").

According to the Amended Complaint, Plaintiffs Infinity Financial and Century Trading entered into contracts with Defendant Cypress Financial in August and September of 2004. (D.E. 66, Exs. A & B).  By 2005, Plaintiff Doria was aware "that something had gone awry." (D.E. 66, ¶35).  In 2007, both Plaintiff Doria and the managing member of Century Trading, Roy Sidikman, were aware of "the methods CAS was using to obtain the ill-gotten funds" from class settlement administrators.  (D.E. 66, ¶47).  By Plaintiffs' own allegations, there were only a few months in 2004 when they were not aware of an alleged problem with Defendants' performance of contractual obligations, nowhere near a "substantial period of time."  Accordingly, Plaintiffs cannot satisfy the continuity requirement, and their RICO claim must be dismissed.

C.   **Plaintiffs Fail to Allege Facts Sufficient to Show that They Were Injured as a Result of Mail or Wire Fraud**

Plaintiffs attempt to base their RICO claims on the predicate acts of mail and wire fraud. To plead mail or wire fraud, Plaintiffs must allege that Defendants (1) intentionally participated in a scheme to defraud another of money or property, and (2) used or caused the use of the mails or wires for the purpose of executing the scheme or artifice.  See United States v. Hewes, 729 F.2d 1302 (11th Cir. 1984) (mail fraud); United States v. Hasson, 333 F.3d 1264 (11th Cir. 2003) (wire fraud).  Although the plaintiff need not allege that it relied on an alleged misrepresentation, it must show that it was injured *as a direct result* of the alleged fraud.  See Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2144 (2008).  As discussed above, Plaintiffs cannot show that their injury, loss of commissions, was a direct result of any mail or wire fraud.  Plaintiffs' alleged loss of commissions did not result from Defendants' transfer of funds to Plaintiffs through the mails or by wire.  Plaintiffs' alleged loss of commissions did not result from Defendants' alleged providing "deflated financial pictures" to "referral agents in the beginning of

the operation of this corrupt enterprise."  Assuming that Plaintiffs were deprived of commissions rightfully theirs under one or more of the documents attached to the Amended Complaint, that loss of commissions resulted solely from Defendants' simply not paying those commissions.

Plaintiffs have failed to allege facts sufficient to show that they were injured as a result of the predicate acts of mail or wire fraud.  Accordingly, their RICO claims must be dismissed.

        D.     Plaintiffs Fail to Allege Facts
              Sufficient to State a Claim for Violation of § 1962(a)

The Court concluded that Plaintiffs failed to state a claim under § 1962(a) in the initial complaint.  (D.E. 63, p. 8, n.9).  Plaintiffs have not remedied this defect.

Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  To survive a motion to dismiss, a plaintiff must allege injuries specifically from use of investment of income and named enterprise.  See Order of Dismissal, D.E. 63, p.8, n.9 ("A plaintiff seeking civil damages for a violation of § 1962(a) must plead facts showing that he was injured by the use of investment of racketeering income." (citing Sadeghi v. Daghighfekr, 36 F. Supp. 2d 279 (D.S.C. 1999); Vemco, Inc. v. Camardella, 23 F.3d 129, 132 (6th Cir. 1994); Nugget Hydroelectric v. Pacific Gas & Elec., 981 F.3d 429, 437-38 (9th Cir. 1992)); see also Super Vision Intern., Inc. v. Mega Intern. Commercial Bank Co., Ltd., 534 F. Supp. 2d 1326, 1341-42 (S.D. Fla. 2008) (concluding "that the Eleventh Circuit would likely follow the rulings of the majority of circuits and require that the plaintiff in a civil RICO action under § 1962(a) show an injury resulting from the investment of racketeering proceeds); In re Sahlen & Assocs., Inc. Sec. Litig., 773 F. Supp. 342, 267 (S.D. Fla. 1991); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991).

In its order, the Court stated:  "The only information hinting at a § 1962(a) claim is the general statement that 'income [derived from the pattern of racketeering activity] was used on the operation of the enterprise to continue its operations, continue to retain additional clients to further perpetrate its scheme, and to pay the salaries and compensation of the owners.'"  D.E. 63,

p. 8, n.9) (citing RICO statement, D.E. 9, p. 28).  The Court continued: "As no specific facts are given to substantiate this claim, Plaintiffs have not stated a claim under § 1962(a)."  In their Amended Complaint, Plaintiffs have not alleged any specific facts to support this claim.  The only allegation regarding income derived from the alleged racketeering activities is that "Defendants['] pattern and practice of creating false financials and records to both the referral agents and court-appointed administrator(s) has resulted in Zinn, Donaldson, Wade, and Goshay purchasing millions of dollars in real estate in both Florida and California, collecting millions of dollars in fraudulent-obtained funds, and creating inarguably the biggest name in the business for the type of settlement claims described herein."  (D.E. 66, ¶52; see also ¶¶ 39, 61).  These allegations, even if true, do not constitute allegations that any of the Defendants invested racketeering proceeds in, as required under Section 1962(a), an "enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  Moreover, Plaintiffs have not alleged and cannot allege that they suffered an injury as a result of the investment of racketeering proceeds.  As before, Plaintiffs have not stated a claim under Section 1962(a), and that claim must be dismissed.

        E.      Plaintiffs Fail to Allege Facts
               Sufficient to State a Claim for Violation of § 1962(d)

The Court also concluded that Plaintiff Doria had failed to state a claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d) because he had failed to show an injury under § 1962(a) or § 1962(c).  In reaching this conclusion, the Court stated that "a plaintiff alleging a violation of § 1962(d) must first show an overt act that is independently wrongful under a substantive provision of the RICO statute."  (D.E. 63, p.8) (citing Beck v. Prupris, 529 U.S. 494 (2000)).  Under the same reasoning, the Court should conclude that Plaintiffs have failed to state a claim under 18 U.S.C. § 1962(d).

III.

The Complaint Does Not Comply<br>With Rule of Civil Procedure 9(b)

Counts I, II, and V must be dismissed for failure to comply with the requirements of Rule of Civil Procedure 9(b).  Rule 9(b) requires that fraud be pled with particularity.  The Eleventh Circuit held that Rule 9(b) requires that the complaint set forth "'(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of

omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Ziemba v. Cascade Int'l Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). In Ziemba, the Eleventh Circuit explained how the particularity requirement is vital to protecting defendants' due process rights: "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Id. at 1202 (quoting Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)).

Although Plaintiffs have added some detail about meetings in New York, San Francisco, and Florida, they have not alleged specific facts regarding who committed what predicate acts. As with the initial complaint, Plaintiffs rely on general, non-specific allegations with respect to the elements of their claim. The following statement drawn from the Court's initial order of dismissal continues to apply: "the same, vague claims are alleged against each individual. The pleadings state that each individual defendant (1) 'was an owner of CAS and/or Cypress Financial'; (2) failed to provide an accounting of financial records to referral agents; (3) used private trading records to solicit potential clients, and (4) submitted to the court fraudulent calculations that were 'too large in volume to be verified.'" (D.E. 63, p.13). This vagueness persists in the Amended Complaint. Plaintiffs allege that "CAS began modifying losses and submitting claims to the court-appointed administrator(s)," and "CAS has a pattern and practice of creating false financials and records to both their referral agents and to the court-appointed administrators." (D.E. 66, ¶2). They allege that "Defendants continued to inflate and manipulate the claims they submitted to the court's class action administrator(s)." (D.E. 66, ¶5). They continue to make sweeping generalizations: "as a direct result of the Defendants' operating their enterprise to manipulate and inflate filings, which caused the Defendants' unwillingness to provide financial accountings to their referral agents, which ultimately and directly led to the Plaintiffs [sic] failing to receive literally millions of dollars in unpaid commissions, resulting in the instant lawsuit." (D.E. 66, ¶6). Plaintiffs continue to resort to non-specific passive voice and syntactically challenged statements: "Because of the operation of this corrupt enterprise, a direct and proximate result was proximately misrepresented to the Plaintiffs and class-action administrator(s), directly resulting in the loss of commissions amounting to millions of dollars in

15

damages."  (D.E. 66, ¶6).

The allegations of the Amended Complaint have no bearing on who committed any of the alleged predicate acts.  For example, Plaintiffs allege that Plaintiff Doria, Defendant Wade, and Sidikman met in Manhattan for dinner and drinks and that "[c]landestinely, Wade stated that 'some of the filings had been late being filed and were not accepted, however, the money should be on its way shortly [for the claims that were accepted]'."  (D.E. 66, ¶34) ("[for the claims that were accepted]" is provided as it occurs in the Amended Complaint).  If anything, this statement shows that Wade was forthcoming with Doria and Sidikman and admitted that funds would not be paid where the claims had been late filed.  The Amended Complaint alleges that "Doria began to regularly contact Mark Zinn, Mark Donaldson, and Jonathan Wade asking where the additional commission monies were and what the payments that had been made were for," but never alleges an answer provided by any of these Defendants.  (D.E. 66, ¶36).  The Amended Complaint alleges that Defendant Donaldson wrote Doria to say "'you can call me anytime to see what you guys have in the queue,  Like I said, there was so much trading back in the Rumson days that checks are constantly coming in.'"  (D.E. 66, ¶37).  Even when the complaint discusses meetings with particular people, it drifts back to generalizations, as in "CAS informed Doria that they were looking to sell the business."  (D.E. 66, ¶41).  As in the initial complaint, the Amended Complaint singles out Mark Zinn, who, according to the allegations, explained to Plaintiff Doria and Sidikman how CAS submitted claims.  (See, e.g., D.E. 66, ¶¶42-47).  If anything, what Mark Zinn allegedly disclosed to Plaintiff Doria, if true, would have caused any reasonable businessman to terminate his relationship with Defendants, not continue to ask for his cut of the allegedly ill-gotten gains.

Compounding the confusion of the pleadings, Plaintiffs fail to state which sections of RICO Defendants allegedly violated, which sections which Defendants allegedly violated, which "Plaintiff was injured in its business and property as a direct result of the Defendant persons [sic] continuous pattern of racketeering activity," (D.E. 66, ¶66), or which Defendants allegedly made false statements to which Plaintiffs.[11]   It does not help that Plaintiffs regularly omit the apostrophe showing possession, without which it is impossible to decipher whether Plaintiffs are

---

[11]    See Cordova v. Lehman Bros., Inc., No. 05-21169-CIV-MOORE/GARBER, 2007 WL 4287729, at *6 (S.D. Fla. Dec. 7, 2007) ("a plaintiff's use of the passive voice in alleging a fraud can impermissibly obscure allegations such that the allegations fail to satisfy the particularity requirements of Rule 9(b)").

16

identifying one or more of the Defendants.  Most importantly, Plaintiffs attempt to achieve through sheer force of syntax what they cannot achieve through a statement of facts:  "Because of the operations of this corrupt enterprise, a direct and proximate result was misrepresented to the Plaintiffs and class-action administrator(s), directly resulting in the loss of commissions amounting to millions of dollars in damages."  (D.E. 66, ¶6).

For these reasons, Plaintiffs' RICO claim should be dismissed.

IV.

The State Laws Claims Should be Dismissed

In its order dismissing the initial complaint, the Court stated that it "would decline to exercise supplemental jurisdiction over the pendent state law claims if the RICO claim is dismissed."  (D.E. 63, p.14, n.18).  For this reason and those cited in Defendants' memoranda in support of their motion to dismiss the initial complaint, which is incorporated into this memorandum by reference, the Court should dismiss the remaining state law claims.  (See D.E. 13, pp. 12-18).

Should the Court reach the state law claims, the Court would have to dismiss the contract claims, and, arguably, all of the claims for improper venue.  Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  The "Infinity Financial Agreement" and the "Century Trading Agreement" contain forum selection clauses that state that "[a]ny dispute relating to, in connection with or arising out of this Agreement shall be brought in the State and Federal courts located in New York County, New York."  (Ex. B, ¶7(d) and Ex. C, ¶7(d)).  Notwithstanding the express language contained in the Infinity Financial agreement, Plaintiffs plead that "[t]he Infinity Financial Agreement dictated the application of Florida law."  (D.E. 66, ¶28, n.6).  Plaintiffs' conclusory allegation carries no weight where it is contradicted by the exhibits to the complaint.  See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("where the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern") (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).  Plaintiffs have not alleged any facts that would make this forum selection clause unreasonable.  For these reasons, venue is not

proper in the Southern District of Florida, and the claims should be dismissed.[12]

V.

Amendment Would be Futile

A complaint may be dismissed with prejudice where it is established that the plaintiff cannot, with leave to amend, cure the legal defects that warranted the dismissal.  See Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1239-40 (11th Cir. 2000).  The district court need not grant a plaintiff leave to amend "where amendment would be futile."  Id.; see also Case v. Riley, No. 11489, 2008 WL 764560 (11th Cir. Mar. 25, 2008) (affirming district court's dismissal with prejudice where amendment would have been futile).

Plaintiffs have had several opportunities to plead facts sufficient to show proximate causation required to bring a claim under 18 U.S.C. § 1964(c):  the initial complaint, their RICO statement, their interrogatory answers, and now their amended complaint.  In none of these have Plaintiffs alleged an injury sufficiently direct to satisfy § 1964(c)'s proximate cause requirement. Nor is there any basis to believe that Plaintiffs could cure this defect given yet another opportunity to amend.  The premise of Plaintiffs' claims is fundamentally flawed:  they allege that they have been injured because they have not received their share of Defendants' allegedly ill-gotten gains.  Even assuming that Defendants submitted fraudulent claims to class settlement administrators, had entered into an unsavory relationship with one or more of the administrators, and mailed or wired funds to one or more of the Plaintiffs, Plaintiffs have not alleged any injury to themselves stemming from such activities.  Moreover, Plaintiffs have ignored many of the problems that the Court identified for them in connection with their first complaint.  Providing them with further opportunity to amend would only waste the Courts' and the parties' resources.

For these reasons, Plaintiffs' RICO claims should be dismissed with prejudice.

---

[12]     Had Plaintiffs' initial complaint been based on the documents attached to their Amended Complaint, Defendants could have moved for dismissal under Federal Rule of Civil Procedure 12(b)(3).  Regardless of the availability of this basis for dismissal, the Court must first determine whether it has jurisdiction over Plaintiffs' claims as a threshold matter.  As discussed above, Plaintiffs have failed to sufficiently allege facts that would show that they suffered an injury as a direct result of Defendants' alleged misconduct and they have not alleged facts that would show proximate cause.  For these reasons, the Court should dismiss for lack of subject matter jurisdiction without having to reach the state law claims.

<u>CONCLUSION</u>

For these reasons, the Court should dismiss the Amended Complaint with Prejudice.

> Walter J. Mathews & D. Patricia Wallace
> Fla. Bar Nos. 0174319 & 0185930
> wjmathews or pwallace@wjmlawfirm.com
> Walter J. Mathews, P.A.
> Attorneys for Defendants
> Courthouse Law Plaza
> 700 SE Third Avenue, Suite 300
> Fort Lauderdale, Florida 33316
> Tel:    (954) 463-1929 Fax: -1920
>
>
> By:    s/ D. Patricia Wallace
>           D. Patricia Wallace

<u>CERTIFICATE OF SERVICE</u>

I certify that that on December 1, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on David Feingold, counsel for Plaintiffs, via transmission of Notices of Electronic Filing generated by CM/ECF.

> s/ D. Patricia Wallace
>     D. Patricia Wallace

19