UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80512-CIV-MIDDLEBROOKS/JOHNSON

JEFF DORIA,
INFINITY FINANCIAL PARTNERS, INC.,
and CENTURY TRADING GROUP, LLC,
    Plaintiffs,
vs.

CLASS ACTION SERVICES, LLC,
CYPRESS FINANCIAL RESEARCH, LLC,
MARK ZINN, MARK DONALDSON,
JONATHAN WADE, JEFF GOSHAY,
ROXANNE ZINN, and ROBERT ZINN,
    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DE 71)

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss the Amended Complaint (DE 71). Plaintiffs responded (DE 81), to which Defendants replied (DE 82). The Court has reviewed the record in relevant part and is advised in the matter. For the reasons stated below, Defendants' Motion is granted.

## I. Background

This dispute involves a Wall Street trader and two corporations suing six individual defendants, a corporate entity, and a related business entity. Plaintiffs allege causes of action for violations of the civil RICO statute,[1] common law fraud, breach of contract, an accounting, and declaratory and preliminary injunctive relief.

Plaintiffs' initial Complaint (DE 1) was dismissed on the grounds that: (1) corporate entities Century Trading Group, LLC ("Century") and Infinity Financial Partners ("Infinity") failed to state

---

[1] 18 U.S.C. §§ 1961-68.

1

a claim for which relief could be granted; (2) Plaintiffs failed to allege an injury sufficiently direct to satisfy RICO's proximate cause requirement[2]; (3) Plaintiff Doria failed to allege facts sufficient to state a claim under RICO[3]; (4) the Complaint failed to allege facts showing that Defendants committed an overt act that is independently wrongful under a substantive provision of RICO[4]; (6) the Complaint failed to allege facts showing that Defendants committed predicate acts of mail or wire fraud; and (7) the absence of specific facts and lack of delineation among Defendants and their actions violates the particularity required by FED.R.CIV.P. 9(b).[5] *See* DE 63.

Plaintiffs subsequently filed an amended complaint,[6] which is the subject of the instant Motion. The Amended Complaint (DE 66) alleges the following facts:

Plaintiffs formed a business relationship with Defendants following the stock market downturn and several corporate scandals in 2001. *See* DE 66, ¶ 2. Corporate Defendant Class Action Services, LLC ("CAS") recruited investors who had lost substantial amounts of money due to the events of 2001. *See id.* The investors were located with the assistance of commissioned, contracted referral agents. *See id.* CAS used the investors' trading records to develop claims of the investors' sustained losses. *See id.* CAS then sought reimbursement of the investors' claims through federal government-

---

[2] *See* 18 U.S.C. § 1962(c).

[3] *See* 18 U.S.C. § 1962(a).

[4] As required by 18 U.S.C. § 1962(d).

[5] Given the flaws in Plaintiffs' civil RICO claims, the Court found it unnecessary to address the state law claims.

[6] Plaintiffs simultaneously filed a "Notice of Compliance with the Court's Order" (DE 67), which restates various parts of the Amended Complaint and attaches the Court's Order granting Defendants' Motion to Dismiss the initial Complaint. The Notice fails to provide additional substantive information.

administered and/or privately-administered class action funds ("the Fund").[7] The goal of CAS was to recover millions of dollars for some of the Wall Street investors who were hardest hit by the 2001 events. *See id.* At some point, CAS began modifying losses and submitting claims to the court-appointed administrator of the federal government settlement fund for amounts much larger than the investors' actual losses. The sheer volume of claims submitted by CAS to the Fund made it nearly impossible for the court-appointed administrator firms to verify CAS's calculations. *See id.* To ensure that the deceptive calculations would not be verified, Defendants made an agreement with a person who worked for one or more of the court-appointed administrator firms.[8] *See id.* at ¶ 3. The agreement also made it possible for Defendants to receive settlement funds after the filing deadlines. *See id.*

On or around August 12, 2003, Defendants CAS and Cypress Financial ("Cypress") executed a referral agreement ("CAS/Cypress Agreement") under which Cypress agreed to "solicit, contact and develop relationships with securities traders, institutional investors, [and] other investors . . . and refer such clients to CAS with the intent to have them enter into CAS's Standard Services Agreement." while CAS agreed to provide services to Cypress Clients. *See* DE 66, Exhibit ("Exh.") A, ¶ 1. CAS agreed to pay Cypress 35% of the net proceeds.[9] If the net proceeds exceeded $500,000, Cypress was to receive 45% of the entire amount of the net proceeds. *See id.* at Exh. A, ¶ 2. If the net proceeds exceeded $1 million, Cypress was to receive 50% of the entire amount of net proceeds. *See id.* at Exh.

---

[7] The Fund is described as a federal government administered and/or private, class-action administered multi-billion dollar settlement fund. *See* DE 66, ¶ 2.

[8] The firms referenced by Plaintiffs are Gallardi and Garden City Group. *See* DE 66, ¶ 2.

[9] "Net Proceeds" is defined as "any and all amounts collected by CAS in connection with the settlements or judgments, whether in cash or securities, for any Cypress Client." *See* DE 66, Exh. A, ¶ 2.

3

A, ¶ 2. Cypress then entered into an agreement with Infinity whereby it would pay Infinity 80% of any net proceeds and other sums paid by CAS to Cypress for Infinity referrals. *See id.* at Exh. B, ¶ 1. Similarly, Cypress and Century executed an agreement whereby Cypress would pay Century 40% of any net proceeds and other sums paid by CAS to Cypress for any of the Andover Parties as well as 80% of any net proceeds and other sums for other referrals. *See id.*

Plaintiffs aver that from the execution date of the agreements until 2006, CAS and/or Cypress provided correspondence pertaining to Plaintiffs' referrals, as required by the agreements. *See id.* at Exh. B. ¶ 2. However, over time, as Defendants allegedly inflated and manipulated claims, Plaintiffs received checks in the mail unaccompanied by any explanation or financial documents. *See id.* at ¶ 5. Defendants "operated an enterprise with the intent to scheme and manipulate claims submitted to the court's class action administrator(s) by inflating losses, erasing profits, modifying options, and taking other actions that resulted in the Defendants['] retaining millions of dollars in ill-gotten funds" while "misrepresent[ing] the claims actually received, [] reducing the referral commissions [] paid to the referral agents." *See id.* at ¶ 6.

## II. Standard of Review

For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true.[10] *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998). The threshold for a complaint to survive a motion to dismiss is "exceedingly low." *See*

---

[10] A Civil RICO case statement is required under Local Rule 12.1 for the Southern District of Florida and may be considered in the context of a motion to dismiss. *See Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F.Supp. 2d 1326, 1331 n.2 (S.D.Fla. 2008) (citing *In re Managed Care Litig.*, 135 F.Supp.2d 1253, 1261 (S.D.Fla. 2001)).

*Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). "[S]tating [] a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**III. Analysis**

**A. Defendants' Motion to Dismiss (DE 71)[11]**

Defendants argue that the RICO claim must be dismissed with prejudice because Plaintiffs fail to allege facts sufficient to establish standing and fail to state a claim, and amendment would be futile. *See* DE 72. Specifically, with regard to the failure to state a claim, Defendants contend that Plaintiffs fail to allege: (1) sufficient conduct by Defendant Goshay, Roxanne Zinn, and Robert Zinn; (2) facts that satisfy the continuity requirement of RICO; (3) facts sufficient to show that Plaintiffs were injured as a result of mail or wire fraud; (4) facts sufficient to state a claim for a violation of 18 U.S.C. § 1962(a); and (5) facts sufficient to state a claim for a violation of 18 U.S.C. § 1962(d). *See id.* at pp. 10-14. Defendants further aver that Counts I (RICO), II (Fraud), and V (Declaratory and Preliminary Injunctive Relief) do not comply with FED.R.CIV.P. 9(b) and the state law claims should be dismissed.

---

[11] Accompanied by Defendants' Memorandum of Law (DE 72).

**B. The Federal RICO Act**

The RICO Act, 18 U.S.C. § 1961 *et seq.*, provides civil and criminal liability for persons engaged in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962(a-d); *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, 2008 WL 3166533 (S.D.Fla. 2008). The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308 (11th Cir. 2000) (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)). Plaintiffs in [a civil RICO] action must identify and prove a pattern of racketeering activity, defined as two "predicate acts" of racketeering activity within a 10 year period. *Langford*, 231 F.3d at 1311-12. The phrase "racketeering activity" is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud. *Id.* at 1312.

**1) Standing**

Defendants first contend that Plaintiffs lack standing to bring their RICO claims. To satisfy Article III standing requirements, a plaintiff must demonstrate that (1) the plaintiff has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the actions of the defendant, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A RICO plaintiff also "must show a causal connection between his injury and a predicate act" in order to recover under the statute. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992); *Maiz v. Virani*, 253 F.3d 641, 672 (11th Cir. 2001) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir. 1991)); *see also*

18 U.S.C. § 1964(c). While there must be "some direct relation" between the alleged injury and the defendants' conduct, such conduct need not be the "sole cause" of the alleged injury. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287-88 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)).

In the case at bar, Defendants argue that Plaintiffs "have not identified the alleged injury to their business or property as anything other than loss of commissions," and that Plaintiffs' harm (nonpayment of commissions) is "entirely distinct from the alleged RICO violations (allegedly defrauding class settlement administrators or the courts)." DE 72, pp. 7, 9. They argue that "the proper claim is for breach of contract: namely, that Plaintiff[12] did not get paid what he was owed under his referral agreement," because even "assuming that CAS misreported its claims to settlement administrators, [] such reporting [would not have] *cause*[*d*] any alleged lower payments to Plaintiffs." *Id.* at pp. 8-9. Defendants aver that Plaintiffs have failed to plead that they were injured as a result of any alleged predicate acts, so "Plaintiffs' purported damages cannot be attributed to any alleged racketeering activities of Defendants." *Id.*

In response, Plaintiffs emphasize that Doria and CAS are proper parties to the lawsuit because both are third-party or quasi-third-party beneficiaries of the referral agreements. *See generally* DE 81, pp. 6-11. Plaintiffs contend that "it is a direct result of the Defendants operating their enterprise to manipulate and inflate filings, which caused the Defendants['] unwillingness to provide financial accountings to their referral agents, which ultimately and directly led to the Plaintiffs['] failing to receive [] millions of dollars in unpaid commissions, resulting in the instant lawsuit." *Id.* at p. 12; DE

---

[12] Presumably, Plaintiff Doria, although this contradicts Defendants' contention that Doria is not a party to or third-party beneficiary of the agreements.

66, pp. 5-6. Plaintiffs generally allege that Defendants' "corrupt enterprise [] intended to commit mail and wire fraud with the purpose of committing fraud against the Defendants' referral agents and court-appointed administrators." DE 81, p. 14; DE 66, p. 6.[13]

Defendants assert that Plaintiffs have "added some detail but very little relevant substance" to the Amended Complaint, and the Court agrees. Although general factual allegations of injury may satisfy standing at a motion to dismiss stage, the pleadings must include "allegations of injury resulting from the defendant's conduct." *Lujan*, 504 U.S. at 560. Further, "RICO provides a private right of action for treble damages to any person injured in his business or property *by reason of* the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131, 2138 (2008) (emphasis added); *see also Anza*, 547 U.S. at 462 ("[A] claim is cognizable under § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury. The proximate-cause inquiry [] requires careful consideration of the 'relation between the injury asserted and the injurious conduct alleged.'" (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992))).

Even drawing all inferences in Plaintiffs' favor, Plaintiffs have failed to properly allege a RICO cause of action. In the case at bar, Plaintiffs allege that (1) Infinity and Century each had financial agreements with Cypress whereby they would receive compensation for clients whom they referred to Cypress; (2) Doria was a third-party beneficiary and CAS was a "quasi-third party beneficiary" to the agreements; (3) on behalf of referred clients, Defendants (specifically, CAS) submitted fraudulent claims to the administrators of the Fund; (4) Defendants received money in excess of the actual losses

---

[13] The language in *Bridge* applies with equal force to wire fraud.

that were legally recoverable from the Fund; (5) Defendants distributed a portion of the money to their clients; but (6) Defendants failed to provide money that owed to Infinity and Cypress pursuant to the referral agreements, as they provided no compensation for referrals or provided partial compensation without an accounting.[14] This simply is not a RICO claim.

*Bridge*, *Anza*, and *Holmes* are useful for analysis of the case at bar. In *Bridge*, the plaintiffs alleged that defendants had fraudulently obtained a disproportionate share of liens in Cook County's tax sales by violating the Single, Simultaneous Bidder Rule at county auctions. The United States Supreme Court affirmed the Seventh Circuit's finding that the plaintiffs had standing because, *inter alia*, the plaintiffs were "immediately injured" by the deprivation of their fair share of liens and the attendant financial benefits. *See Bridge*, 128 S.Ct. at 2136-37. Conversely, in *Anza*, a company was precluded from recovering profits it allegedly lost when a rival business was able to lower its prices because it failed to charge the requisite sales tax on cash sales. *See Anza*, 547 U.S. at 456-61.

In *Holmes*, the Court also found that a corporation could not recover for injuries caused by a stock-manipulation scheme that prevented two broker-dealers from meeting obligations to their customers, thereby triggering the corporation's obligation to reimburse customers. *Holmes*, 503 U.S. at 270-74. *Holmes* clearly held that a plaintiff must show that the defendant's RICO violation not only was a 'but for' cause of his injury, but was the proximate cause as well. *Id.* at 265-68.

Applying the Supreme Court's precedent, this Court fails to find the existence of proximate causation in the case at bar. Even assuming that Plaintiffs properly have alleged the predicate acts,

---

[14] Plaintiffs walk a fine line with their allegations. Apparently, Plaintiffs are pleading that they knew about the fraud, but they were entitled to the "clean money" pursuant to the referral agreements.

and acknowledging that they do not need to prove first-party reliance upon Defendants' misrepresentations,[15] Plaintiffs have not shown that they were injured by reason of Defendants' alleged pattern of racketeering activity.[16] Careful consideration of the pleadings leads the Court to conclude that Plaintiffs' alleged injury—the loss of commission money—was not proximately caused by any alleged acts of mail and wire fraud. Accordingly, the RICO claim shall be dismissed with prejudice. Amendment would be futile, as Plaintiffs cannot cure this defect.

### 2) Failure to State a Claim Under RICO[17]

#### a. Claims against Goshay, Roxanne Zinn, and Robert Zinn

Defendants also argue that Plaintiffs have failed to allege sufficient conduct by Jeff Goshay, Roxanne Zinn, and Robert Zinn. Plaintiffs aver that the defendants all "engaged in a continuous pattern of criminal activity and serve as officers of the offending business enterprise." DE 66, ¶ 54.

---

[15] Per *Bridge*, 128 S.Ct. 2131 (2008).

[16] Accepting the facts as true, the court and the administrators, rather than Plaintiffs, would be proper parties to bring a RICO claim. Plaintiffs refer to a "continuous pattern of criminal activity," which includes "the fraudulent submission of a claim for reimbursement on behalf of a client's alleged sustained recognized loss of AOL Time Warner stock . . . through federal government administered settlements and/or private class action administrators" as well as two, other, similarly described claims involving other clients and stocks. DE 66 at ¶ 64. Plaintiffs allege that "the court and/or court-appointed administrator(s) would use either the interstate mail, via the United States Postal Service, to send checks or interstate electronic funds wiring to deliver the settlement funds to CAS" and that CAS would "send either checks by interstate mail via the United States Postal Service or interstate electronic wires to [Cypress, Infinity, or Century's] offices in Florida and/or New York." Id. at ¶ 35. Plaintiffs boldly assert: "Clearly, as the Defendants['] fraudulent scheme stretched from coast to coast, affecting individuals and entities in all fifty (50) states, via the United States Postal Service, and wires were monumentally instrumental in carrying out their fraudulent scheme." *Id.* Yet Plaintiffs fail to show how a direct connection between their injury and any mail or wire fraud.

[17] For purposes of completeness, the Court shall address Defendants' other arguments.

Plaintiffs maintain (in a footnote) that "Roxanne Zinn is listed as Manager/Member of [Cypress] on the Florida Department of State Division of Corporation's website" and "Robert Zinn was at one time listed as the Manager/Member of [Cypress], was/is responsible for maintaining the financial records, . . . among other daily tasks." DE 66, p. 3, n.1. Yet Plaintiffs concede that "Mark Zinn was the primary individual responsible for the daily activities of Cypress" and "for the operation and managing of Cypress." *Id.*

As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss. *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.2d 402, 409 n.10 (11th Cir. 1996) (citation omitted). The key to RICO liability is *actual* participation in the operation or management of the enterprise, not job titles or mere employment. *Comcast of S. Fla. II, Inc., v. Best Cable Supply*, 2008 WL 190584 *8 (January 22, 2008). Plaintiffs have not sufficiently pled factual allegations as to how Defendants Goshay, Roxanne Zinn, and Robert Zinn participated in the affairs of the RICO enterprise. Thus, the RICO claims against Goshay, Roxanne Zinn, and Robert Zinn are due to be dismissed on this alternate ground as well.

### b. The Continuity Requirement of RICO

Defendants aver that Plaintiffs cannot satisfy the RICO continuity requirement. *See* DE 72, pp. 11-12. Plaintiffs do not specifically refute this assertion in their response.

To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (citations omitted). Continuity may be proven in a variety of ways, depending on the specific facts of the case. *United*

11

*States v. Browne*, 505 F.3d. 1229, 1259 (11th Cir. 2007) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)). It "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J., Inc.*, 492 at 242).

In open-ended cases that rely on alleging the *threat* of continuity, plaintiffs can meet their burden by establishing either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Jackson*, 273 F.3d at 1265 (quoting *H.J., Inc.*, 492 at 242). Alternatively, closed-ended continuity requires a specific, substantial period of time for the unlawful conduct. *See id.* at 1265-66. To analyze whether Plaintiffs properly have pled the continuity element of a pattern of racketeering activity, the Court takes as true the allegations that Defendants constitute an enterprise and that the alleged unlawful conduct constitutes predicate acts for RICO purposes. Regardless, the general, conclusory allegations in the Amended Complaint are insufficient to meet either the closed- or open-ended continuity requirement necessary to sustain a RICO violation,[18] thus providing an alternative ground for dismissal of the RICO claim.

### c. Failure to State a Claim Under § 1962(a)

Defendants assert that Plaintiffs have failed to state a claim under § 1962(a). Plaintiffs have failed to directly address this contention.

---

[18] The Amended Complaint employs past tense language, though Plaintiffs add that, "[j]ust in the last year," CAS still has been in operation. *Id.* at ¶ 52. As far as the Court can discern, Plaintiffs purport to allege mail and wire fraud sometime toward the end of 2006 through 2008. *See generally* DE 66, ¶¶ 35-46, 64. No clear, substantial time period is given, and no specific acts are alleged.

Section 1962(a) makes it unlawful for a person to use or invest income derived from a pattern of racketeering activity in an enterprise engaged in or affecting interstate or foreign commerce. *See* 18 U.S.C. § 1962(a). In the case at bar, Plaintiffs state generally that "income [derived from the pattern of racketeering activity] was used in the operation of the enterprise to continue its daily operations, continue to retain additional clients to further perpetrate its scheme, and to pay the salaries and compensation of the owners." DE 9, p. 28. As no facts are given to substantiate this assertion, Plaintiffs have failed to state a claim under § 1962(a).

### d. Failure to State a Claim Under § 1962(d)

Defendants contend that Plaintiffs have failed to state a claim under § 1962(d). To support a claim of RICO conspiracy under § 1962(d), Plaintiffs must allege an illegal agreement to violate a substantive RICO provision. *See Jackson*, 372 F.3d at 1279; 18 U.S.C. § 1962(d). As Plaintiffs have failed to allege that Defendants conspired to violate any of the substantive provisions of the RICO laws, Plaintiffs have failed to state a claim under § 1962(d).[19]

### 3) Compliance with FED.R.CIV.P. 9(b)

Defendants argue that Counts I (RICO), II (Fraud), and V (Declaratory and Preliminary Injunctive Relief) of the Amended Complaint fail to comply with FED.R.CIV.P. 9(b), as there are no specific facts alleged regarding who committed what predicate acts, and Plaintiffs "rely on general, non-specific allegations with respect to the elements of their claim." DE 72, pp. 16-17.[20] Plaintiffs

---

[19] The civil RICO statement "asserts violations of 18 U.S.C. § 1962(a), § 1962(c), and § 1962(d)" and "[t]here is no alleged violation of 18 U.S.C. § 1962(b), [but] discovery is continuing . . ." DE 9, p. 1.

[20] Count V is a claim for "declaratory and preliminary injunctive relief." Declaratory judgments and injunctions are equitable remedies, not causes of action. *See Feingold v. Budner*,

contend that the proper parties to this litigation have been clarified. *See* DE 81, pp. 8-9.

A complaint alleging fraud must satisfy FED.R.CIV.P. 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Id.* (citation omitted). Rule 9(b)'s particularity requirement applies both to Plaintiffs' fraud claim and their RICO claim. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity").

In the case at bar, Plaintiffs have failed to sufficiently allege—in either the Amended Complaint or in the RICO statement—precise statements, documents, or misrepresentations made, and the time and place of and person responsible for the statement. *See Ambrosia Coal*, 482 F.3d at 1316. For example, the civil RICO statement requires Plaintiffs to "[state with particularity] the circumstances constituting fraud or mistake." DE 9, pp. 15-16 (question 5(c)). However, Plaintiffs refer the reader to "section 5(b) for the specific time, place, contents, identity of persons, etc. surrounding the Defendants['] wire fraud and mail fraud activities." *Id.* at pp. 15-16. Section 5(b) fails

---

2008 WL 4610031 *2 (S.D.Fla. Oct. 10, 2008). A plaintiff must prevail on an underlying claim in order to be entitled to either form of relief. *Id.* (citations omitted). As Count I must be dismissed and the Court is declining to exercise supplemental jurisdiction over the state law claims (and Count II as pled must be dismissed), Count V shall be dismissed without further comment.

14

to provide specific details, merely claiming that "the dates of the predicate acts/incidents of criminal activity range from approximately 2002 through 2008."[21] *Id.* at 14.

A significant part of Plaintiffs' narrative accuses "Defendants" (collectively) of wrongdoing. Defendant Mark Zinn is singled out as the person who operated and managed the enterprise, and as the person with whom Doria primarily had contact. *See, e.g.*, DE 66, ¶¶ 27-28, 36-45. The Amended Complaint also frequently mentions CAS. *See generally* DE 66. However, substantive, specific assertions are lacking against Mark Zinn, CAS, and all other defendants with regard to both the RICO and the fraud claims. By and large, the same vague, conclusory, general claims are alleged against each individual. After a thorough review of the Amended Complaint and RICO statement, the Court finds that the absence of specific facts with respect to each defendant and his/its actions and the lack of delineation among defendants violates the particularity required by FED.R.CIV.P. 9(b).[22] Counts I (RICO) and II (fraud) must be dismissed for lack of particularity.[23]

### 4) State Law Claims

Defendants aver that Plaintiffs' state law claims should be dismissed because the federal RICO claim fails. Plaintiffs have not addressed this argument.

The Court has original jurisdiction over Plaintiffs' RICO claim (Count I) pursuant to 28

---

[21] Dates contradicted by the Amended Complaint. *See* DE 66, ¶¶ 34, 35.

[22] A prime example of the generality of the allegations is the conclusory statement that, "Plaintiffs were cheated out of millions of dollars in earned commissions as a result of the Defendants [sic] continued scheme to defraud the federal government and its contract referral agents." *See* DE 9, pp. 10-12. The Complaint and RICO statement are replete with such assertions.

[23]

15

U.S.C. § 1331. Pursuant to § 1367(a), a "district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within . . . [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, pursuant to 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction if it dismisses the claims over which it has original jurisdiction. Dismissal of state law claims is strongly encouraged when federal law claims are dismissed prior to trial. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).[24] The Court declines to exercise jurisdiction over Plaintiffs' state law claims.

## IV. Conclusion

Evaluating the Amended Complaint and RICO statement in the light most favorable to Plaintiffs and drawing all inferences in their favor, Defendants' Motion to Dismiss is due to be granted for the reasons stated above. Though Plaintiffs may be able to remedy many of the defects in the Amended Complaint, the absence of proximate causation is fatal to their RICO claim.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (DE 71) is **GRANTED**. Count I of the Amended Complaint (RICO) is **DISMISSED WITH PREJUDICE**. Counts II (Fraud), III (Breach of Contract), IV (Accounting), and V (Declaratory and Preliminary

---

[24] A court also may consider judicial economy, fairness, convenience, and comity when considering whether to exercise supplemental jurisdiction. *See Baggett*, 117 F.3d at 1353. As Defendants note, the language of the two referral agreements on which Plaintiffs' allegations are based dictate that disputes relating to the agreements "shall be brought only in the State and Federal courts in New York County, New York." DE 66, Exh. B ¶7(d) and Exh. C ¶7(d). In the interests of fairness, the forum selected by the parties should be respected. This is another reason for the Court to decline to exercise supplemental jurisdiction over the state law claims.

Injunctive Relief) are **DISMISSED WITHOUT PREJUDICE**. The Clerk of the Court shall **CLOSE** this case, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 2nd day of March, 2009.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to counsel of record.